HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
GABRIEL L. PARDO (Bar No. 261625)
(E-mail: Gabriel_Pardo@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2918
Facsimile: (213) 894-0081

Attorneys for Defendant
DWEN EDWARD CURRY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. CR 15-00666-JFW |
|---|---|
| Plaintiff, | **DWEN CURRY'S POSITION REGARDING FACTORS RELEVANT TO SENTENCING** |
| v. | |
| DWEN EDWARD CURRY, | |
| Defendant. | |

Defendant Dwen Edward Curry, by and through her counsel of record, Deputy Federal Public Defender Gabriel L. Pardo, hereby submits her position regarding factors relevant to sentencing.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: November 2, 2016   By: */s/ Gabriel L. Pardo*
GABRIEL L. PARDO
Deputy Federal Public Defender
Attorneys for Dwen Edward Curry

## I. DWEN CURRY'S SENTENCING POSITION

Dwen Curry is before the Court for sentencing following her[1] admission to allegations 2, 3, and 4 of the Violation Petition filed on March 8, 2016.[2] Ms. Curry agrees that the highest violation grade is B and that, per her Presentence Report, her criminal history category at the time of the underlying conviction was V. Thus, Ms. Curry's revocation guidelines range (per Chapter 7 of the United States Sentencing Guidelines) is 18-24 months. For the reasons explained herein, Ms. Curry respectfully requests that the Court sentence her to one year and one day of incarceration.

As the Court knows, its duty at sentencing is to decide what term meets the directive of parsimony and thus comports with the charge to impose a sentence sufficient, but not greater than necessary, to accomplish the sentencing goals advanced in Section 3553(a).[1] *See* 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007); *United States v. Carty*, 520 F.3d 987, 991 (9th Cir. 2008) (en banc); *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007). Consideration of the advisory Guidelines range is subordinate to the mandate that the punishment be a particularized sentence minimally sufficient to accomplish the statutory purposes of sentencing. *See Carty*, 520 F.3d at 995. A non-guidelines sentence meets the goals of 18 U.S.C. § 3553(a) provided it is in accord with the directive of parsimony. *Kimbrough*, 128 S.Ct. at 575.

As a threshold matter, Ms. Curry notes that all of her criminal history points (10) arise from a series of convictions based on arrests between April and August 2006. *See* PSR ¶¶ 40-43. During this period of time, Ms. Curry was struggling with an addiction

---

[1] Dwen Curry prefers to be identified as female.

[2] Allegations 1 and 5 of the Petition were dismissed.

2

to prescription drugs.[3] It should also be noted that two of Ms. Curry's prior three-point convictions (totaling six criminal history points) were sentenced on the same day to run concurrent. *See* PSR ¶¶ 42, 43. Because the PSR indicates that these convictions were based on conduct separated by an intervening arrest, the Guidelines instruct that each should receive criminal history points. *See* U.S.S.G. § 4A1.2(a)(2).

Ms. Curry respectfully submits that the above facts—the short period of time in which she amassed 10 criminal history points, the drug addiction fueling her conduct, and the fact that two of her three-point convictions were sentenced concurrently on the same day—support an argument that her criminal history score over-represents the seriousness of her criminal history.[4] Had Ms. Curry's point total been one lower (9), her criminal history category would have instead been IV and her Guidelines range at this revocation proceeding would be 12-18 months imprisonment.

The Guidelines instruct that, for supervised release revocation proceedings, "[t]he criminal history category to be used in determining the applicable range of imprisonment . . . is the category determined at the time the defendant originally was sentenced to the term of supervision." U.S.S.G. § 7B1.4, Application Note 1. Because it appears the criminal history category determined at the time of Ms. Curry's original sentencing was V, considerations regarding whether Ms. Curry's criminal history category over-represents the seriousness of her past conduct should be assessed by this Court in connection with application of the principle of parsimony and analysis of the

---

[3] The PSR also describes two incidents during this time period where prescription drugs were found on Ms. Curry. *See* PSR ¶¶

[4] Pursuant to U.S.S.G § 4A1.3(b), a downward departure in criminal history category may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."

3

Section 3553(a) factors. Ms. Curry respectfully submits that these considerations weigh in support of the requested sentence of one year and one day.[5]

Ms. Curry also respectfully submits that her background, history, and characteristics weigh in favor of the requested sentence. Attached to this sentencing position are letters to the Court from Ms. Curry, her mother, and three other friends, supporters, and employers. These letters provide insight into Ms. Curry and her past.

Ms. Curry has struggled for many years with issues related to her identity. Ms. Curry considers herself androgynous, which she describes as: "a person whos percieved to be stuck between two worlds. looks like a girl but really is a boy and thats something ive struggled with the majority of my life." *See* Ex. A. Ms. Curry takes hormone medication and seeks out relationships with men. Growing up in the Midwest, Ms. Curry was subjected to harassment and bullying because of her identity. These issues initially led her to seek solace in drugs, including crack cocaine. *See* PSR ¶¶ 65-66.

Ms. Curry was able to overcome her addiction to crack cocaine. She began a productive career as a wardrobe stylist. But another addiction eventually took hold. Ms. Curry sought solace in material goods, in an effort to fill a void that existed since childhood. As Ms. Curry explains:

> "ive allowed material things to define who i am in the past and ive held a superficial image up by pretending that i am happy, truth of the matter is im not. its a shame ive allowed others to dictate who i am, i realize that the same way that i beat the desease of addiction is the

---

[5] Ms. Curry acknowledges that her criminal history category would increase today based on her conviction in Los Angeles Superior Court case number LA082761. However, because this conviction is the basis for the revocation proceeding, it is appropriately accounted for through the Grade B violation range. *Cf.* U.S.S.G. § 7B1.4, Application Note 2 ("[A]n upward departure may be warranted when a defendant, subsequent to the federal sentence resulting in supervision, has been sentenced for an offense *that is not the basis of the violation proceeding*.") (emphasis added).

4

same way that i can beat this mental illness that i have going on because my behavior is atroshish."

*See* Ex. A.

Ms. Curry's struggles with her identity were compounded by her discovery, upon entering into the custody of the Federal Bureau of Prisons, that she has AIDS. *See* PSR ¶ 61. While she received medical treatment during her time in BOP custody, Ms. Curry did not learn how to live with her condition on the outside. She struggled to accept her condition and her own mortality, and retreated inward. It took her a significant amount of time to admit to her mother—the person she is closest too—that she has AIDS. Fortunately, her mother is now aware of her condition and is willing to do whatever she can to support Ms. Curry. *See* Exhibit B.

It is in this context that the instant violations occurred. Ms. Curry understands and acknowledges that her violation conduct reflects a serious breach of the Court's trust. During her time in state custody, she began working to understand the personal factors that have led her to this behavior. She participated in Moral Reconation Therapy, which helped her to better understand her behavior and take steps to correct it. She also participated in other self-help coursework. She wishes to continue treatment should a new term of supervised release be imposed.

Upon release from custody Ms. Curry will be embraced by her friends and family. *See* Exhibits B-E. She will also have opportunities for employment, including through her close friend and producer Dion Fearon. *See* Exhibit D. Ms. Fearon, who has written to the Court and who defense counsel also spoke with, has both immediate employment opportunities for Ms. Curry and longer-term opportunities, including an opportunity for Ms. Curry to be a cast member on a reality television show. *Id.*

Finally, it should be noted that Ms. Curry spent approximately eight months in state custody for the convictions underlying this revocation proceeding. Although the Guidelines instruct that in these situations any time imposed for supervised release violations should run consecutive, the time Ms. Curry has already served can and

should be considered by the Court, along with the other factors discussed above, in its application of the principle of parsimony and analysis of the Section 3553(a) factors.

## II.  CONCLUSION

For the foregoing reasons and such other reasons as may be discussed at the sentencing hearing, Ms. Curry respectfully requests that the Court sentence her to one year and one day in custody.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: November 2, 2016      By:  */s/ Gabriel L. Pardo*
GABRIEL L. PARDO
Deputy Federal Public Defender
Attorneys for Dwen Edward Curry